UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK CARIOU,

                Plaintiff,

       -against-

RICHARD PRINCE, GAGOSIAN GALLERY, INC., and
LAWRENCE GAGOSIAN,

                Defendants.
------------------------------------------------------------X

No. 08 Civ. 11327 (DAB)

Oral Argument Requested


# SUPPLEMENTAL MEMORANDUM OF LAW OF
# DEFENDANTS GAGOSIAN GALLERY, INC. AND LAWRENCE GAGOSIAN
# IN RESPONSE TO ARGUMENTS SPECIFIC TO THEM
# IN PLAINTIFF'S MEMORANDUM OF LAW


Hollis Gonerka Bart
Chaya F. Weinberg-Brodt
WITHERS BERGMAN LLP
430 Park Avenue, 10th Floor
New York, NY 10022
(212) 848-9800
*Attorneys for Defendants Gagosian*
*Gallery, Inc. and Lawrence Gagosian*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

    A.   Any Finding of Direct Liability of Gagosian is Premature, or at Most, *de Minimis* ...........2

    B.   There Was No Contributory Infringement......................................................................3

    C.   There Was No Vicarious Infringement............................................................................5

Conclusion ......................................................................................................................................7

Defendants Gagosian Gallery, Inc. and Lawrence Gagosian (collectively, "Gagosian") respectfully submit this supplemental Memorandum of Law in opposition to the specific arguments Plaintiff Patrick Cariou ("Cariou") has made in his memorandum of law regarding theories of direct and secondary liability of Gagosian as to the five works by defendant Richard Prince which the Second Circuit has remanded to this Court.

## PRELIMINARY STATEMENT

Gagosian has no liability to Cariou in relation to the twenty-five works which the Second Circuit has held are not infringing as a matter of law. *See Cariou v. Prince*, 714 F.3d 694, 712 (2d Cir. 2013); *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005). As to the remaining five works, summary judgment is precluded on the issue of infringement, for the reasons set forth in defendants' main opposition brief, because there are genuine issues of material fact as to whether the five remaining works are fair use. Thus, any consideration of the extent of Gagosian's direct liability as to these five paintings is premature. But even if all or any one of the remaining five works are found to be infringing (and they are not), any direct liability of Gagosian would, at most, be *de minimis* because, as the consignor, Prince, not Gagosian, was the seller as to the one work that was sold to a third party; Cariou has dropped his claim as to the catalogue, and wisely so, since the images it memorializes were of a historical nature, chronicalling the creation of the series and the works in the show; and any marketing and advertising activities fall outside the purview of direct liability. As to plaintiff's argument that Gagosian is vicariously or contributorily liable, this Court can and should determine, on the basis of the record already before it, that Gagosian has no secondary liability to Cariou as a matter of law.

## ARGUMENT

A.  **Any Finding of Direct Liability of Gagosian is Premature, or at Most, *de Minimis***

It is premature, at this juncture, for this Court to make any finding as to Gagosian's direct liability, unless and until the Works are found to be infringing by a jury. In any event, as evident from the arguments Cariou advances, any direct liability of Gagosian is at most, *de minimis*.

Specifically, Cariou argues that Gagosian is liable for direct infringement to the extent that it advertised, exhibited, and offered the five works for sale. *See* Cariou Memorandum of Law, dated August 1, 2013 ("Cariou Mem.") p.18. However, advertisement and promotion is not "direct" infringement. *See Faulkner*, 211 F. Supp.2d at 473-74 (advertising and promotion may be sufficient for contributory infringement, but only if there is knowledge of direct infringement); *see also* 17 U.S.C. § 106 (advertisement and promotion are not among the enumerated exclusive rights); Point C *infra*.[1] Moreover, Gagosian was not a direct seller because Prince consigned the works to Gagosian. *See* Reply Aff. of Hollis Gonerka Bart, dated June 24, 2010 ("Bart 6/24 Reply Aff.") Ex. C at 90. *See generally Pilliard v. Sotheby's, Inc.*, 1997 U.S. Dist. LEXIS 9725 at * 16 (S.D.N.Y. July 10, 1997) (consignment is not a true sale). In any event, as only one of the five remaining works at issue was sold, one was traded to Gagosian for his

---

[1] In the proceedings below, Cariou also urged direct liability on the basis that Gagosian produced and sold an exhibition catalog, which contained copies of images selected by Prince of many of the non-infringing works, excerpts and enlargements of some of the works, images from Prince's studio reflecting the artistic process and the creation of works, the text of the James Frey's piece, "Ding Dong the Witch is Dead" screenplay, and a listing of the works. *See generally* Aff. of Hollis Gonerka Bart dated May 14, 2010 ("Bart 5/14 Aff."), Ex. M. Images of four of the five works remanded to this Court for further consideration were also reproduced in the Catalog. *Id.* at 1, 5, 6, 7. However, in his remand papers before this Court, Cariou has dropped the argument that the catalog itself is infringing. Indeed, the vast majority (if not all) of the images Prince chose for the catalog do not infringe on Cariou's copyright at all, and even if the Court finds that one or more of the four works (whose images are reproduced in the Catalog) are infringing, this *de minimis* use is certainly "fair use," especially given the obvious historical purpose of the catalog, memorializing the creation of the series and some of the works in the show. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 610 (2d Cir. 2006).

2

personal collection, and the remaining three are unsold, any damages attributable to Gagosian, should it ever be found liable for any "direct infringement," would be *de minimis*, at most.

**B.     There Was No Contributory Infringement**

There can be no liability for contributory infringement absent findings of (1) knowledge of the primary infringement and (2) material contribution to the infringement. *Faulkner v. Nat'l Geographic Soc.,* 211 F. Supp.2d 450, 473 (S.D.N.Y. 2002), *aff'd,* 409 F.3d 26 (2d Cir. 2005). Cariou concedes that Gagosian cannot be liable for contributory infringement absent knowledge of Prince's (alleged) infringing activity. *See Faulkner,* 409 F.3d at 40 (knowledge of primary infringement is necessary to support a finding of contributory infringement); Cariou Mem. p.19. Cariou cannot prove "knowledge" as a matter of law, thereby rendering the issue of "material contribution" superfluous.

Cariou's sole argument is that Gagosian had "constructive" knowledge of Prince's infringement when it received Cariou's cease-and-desist letter on December 11, 2008. *See* Cariou Mem. pp.18-19. On this record, this argument fails as a matter of law. Simply put, Cariou's cease-and-desist letter asserted that all thirty works were infringing, but because the Second Circuit has since found that twenty-five of the works were "fair use," and not infringing as a matter of law, his letter was largely inaccurate.

Moreover, as to the remaining five works, the Second Circuit panel, with extensive knowledge of the laws of copyright, could not say as a matter of law whether these works are infringing. It is thus ludicrous for Cariou to argue that Gagosian "knew" or "should have known" that these five works were infringing, when the Second Circuit itself expressly held, based on all the information in the record, that the status of these five works is not knowable as a matter of law. *Cf. Faulkner,* 211 F. Supp.2d at 475, *aff'd* 409 F.3d 26 (2d Cir. 2005) (no knowledge can be imputed where question of infringement by primary defendant turned on

3

"complex analysis of contractual arrangements.").[2] Indeed, Cariou's submission fails to address how Gagosian can be found to have constructive "knowledge" of infringement where a Second Circuit panel held that twenty-five works were not infringing, and that it did not "know" (either actually or constructively) whether the remaining five works were in fact infringing.

Finally, and as shown in the main opposition brief, given the sharply different contexts of the original creations and expressions of Cariou's realistic black-and-white photography book and Prince's fantastical works, there was no reason for Gagosian to appreciate that any of the works were infringing. Specifically, in contrast to Cariou's realistic depiction of naturalistic Rastafarians, Prince's works had been created in an entirely different context in connection with a pitch Prince had written for a movie about a post-apocalyptic society, where music was one of the few redemptive things to survive. *See* Prince 5/13 Aff. at ¶16; *see also* Bart 6/24 Reply Aff., Ex. C at 30, 192, 207-8, 214-18, 232.

Finding contributory liability under these circumstances would improperly give copyright holders an absolute power to shut down any art show merely by *alleging* that a work is infringing, even if that allegation turns out to be entirely (or almost entirely) wrong. Although galleries are commercial establishments, they serve an important public purpose, because they are a critical channel for displaying and introducing new works. Thus, requiring a gallery to correctly predict the outcome of a complex fair use analysis would effectively impose on galleries and their owners the duty to police works for possible infringement, and thereby have an undue chilling

---

[2] Cariou cites a piracy case *Arista Records LLC v. Doe,* 604 F.3d 110, 118 (2d Cir. 2010), *quoting A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1020 (9th Cir. 2001), and *citing In re Aimster Copyright Litig,* 334 F.3d 643, 650 (7th Cir. 2003) for the unremarkable proposition that constructive knowledge that internet piracy is occurring is sufficient to establish the "knowledge" element of contributory infringement. However, piracy cases are inapposite here, where the Second Circuit has already held that twenty-five of Prince's works are not infringing as a matter of law, and that based on the record as it currently exists it is impossible to "know" whether the five remaining works are infringing. *See also Faulkner,* 211 F. Supp.2d at 474-75 (finding piracy cases inapposite on the issue of knowledge, where issue of direct infringement turned on complex issues of contract law).

4

effect on the creation of new art. Such a result is antithetical to the tenets of copyright law. *See Cariou,* 714 F.3d at 705. Moreover, in cases such as this, where the works at issue are part of a series that is so fundamentally different in creative purpose and in terms of the market for the works, the chilling effect would be even greater if the gallery could be held secondarily liable if it made the wrong call on fair use.

C.   **There Was No Vicarious Infringement**

Vicarious liability for copyright infringement is an outgrowth of the *respondeat superior* doctrine under which an employer or principal can be held liable for acts of an employee or agent. *See Faulkner,* 211 F. Supp.2d at 472. Thus, there can be no liability for vicarious infringement, absent a showing that a defendant both (1) profited directly from an infringement, and (2) had the right and ability to supervise the direct infringer. *Id.* Here, Cariou cannot satisfy the second element as a matter of law.

The uncontroverted record instead shows that Prince created his art outside of Gagosian's contractual or practical supervision and control. Specifically, Prince created the works in his studio in the Hamptons. *See* Bart 6/24 Reply Aff., Ex. C at 174-75. Mr. Gagosian generally worked out of his offices in New York City, and not in the Hamptons. Bart 5/14 Aff., Ex. M at 15. Indeed, Gagosian had no involvement with any of the works until *after* they were created. Gagosian's after-the-fact conduct with respect to the works which had already been created (and which for the most part were non-infringing as a matter of law) does not support a finding that Gagosian had the ability to retroactively supervise Prince in connection with his creation of the works.

Cariou's only cite is to *Shapiro, Bernstein & Co., Inc. v. H.L. Green Co. Inc.,* 316 F.2d 304, 307-08 (2d Cir. 1963), a piracy case, where the relationship between the parties was found to be similar to an employer/employee model. *Id.* at 308. Specifically, in *Shapiro,* the vicarious

5

infringer had an express contractual right to supervise all activities of the primary infringer, impose a code of conduct on it, and terminate its employees "in its unreviewable discretion." *Id.* at 306. Clearly, no such facts exist here, and thus *Shapiro* is entirely inapposite.

Moreover, in the years after *Shapiro*, courts in the Second Circuit have reiterated the strict requirements for vicarious infringement. *See Faulkner,* 211 F.Supp.2d at 472 (for vicarious liability to attach, the defendant must have the "right and ability to supervise the infringing activity"). "[T]he control must be substantial and have practical force." *Id.* at 473 n.140. "[T]he parties' paths must cross on a daily basis, and the character of this intersection must be such that the party against whom liability is sought is in a position to control the personnel and activities responsible for the direct infringement." *Id., citing Banff Ltd. v. Limited Inc.* 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994); *accord Softel, Inc. v. Dragon Med. & Scientific Commc'ns Inc.,* 118 F.3d 955, 971 (2d Cir. 1997). On the record before this Court, these cases negate any possibility of vicarious liability.

Cariou's unsubstantiated argument that Gagosian nevertheless had a free-floating obligation to "police infringing conduct" (Cariou Mem. p.19), even outside a *respondeat superior* relationship, finds no support in existing case law. From a practical perspective, it is unworkable, especially in a case involving original artwork, and a credible (and ultimately meritorious) argument of fair use. To hold otherwise would put an inappropriate burden on gallery owners, who have no control over the creation of works, to act as censors after a work is created based solely on a possibility that a piece of art might later be found to be infringing. Indeed, its perverse results are apparent in this case, where Cariou essentially contends that Gagosian was required to censor and suppress all thirty of Prince's works to avoid vicarious liability, when the Second Circuit has found that twenty-five of those works are fair use and

6

non-infringing, and was uncertain about the remaining five works. Cariou's argument must therefore be rejected.

## CONCLUSION

For all of the reasons stated, Gagosian respectfully requests that this Court find that the issue of finding direct liability is premature at this juncture, or is at most, *de minimis* such that it makes no sense to continue to keep Gagosian in this case, and that Gagosian has no secondary liability to Cariou as a matter of law.

Dated: New York, New York
       October 15, 2013

                        WITHERS BERGMAN LLP

                        By:  /s/ Hollis Gonerka Bart
                        Hollis Gonerka Bart
                        Chaya F. Weinberg-Brodt
                        430 Park Avenue, 10th Floor
                        New York, NY  10022-3505
                        (212) 848-9800
                        *Attorneys for Defendants Gagosian Gallery, Inc.*
                        *And Lawrence Gagosian*