UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK CARIOU,

                                Plaintiff,

               -against-

RICHARD PRINCE, GAGOSIAN GALLERY,
INC., and LAWRENCE GAGOSIAN,

                               Defendants.
------------------------------------------------------------X

No. 08 Civ. 11327 (DAB)

### SUPPLEMENTAL DECLARATION OF BRIAN WALLIS, PH.D.

I, Brian Wallis, declare as follows:

1.     I submit this supplemental declaration in response to the Brief *Amici Curiae* submitted by Megan Murphy, Senior Director, Getty Images, and representative to the Picture Archive Council of America ("PACA"); Mickey Osterreicher, General Counsel, National Press Photographers Association ("NPPA"); Lisa Shaftel, National Advocacy Committee Chair, Graphic Artists Guild ("GAG"); photographer Jeremy Sparig; Minda Zetlin, President, American Society of Journalists and Authors ("ASJA"); and others (collectively, "Photographer Amici").

### I.    Artistic Use is Fair Use

2.     At the International Center of Photography ("ICP"), where I work, we present major exhibitions of contemporary and historical photographs that reach an audience of 250,000 visitors annually. In addition, every year our school engages in professional classes, workshops, and seminars for over 6,000 students of all ages and backgrounds. The ICP Collection includes over 125,000 photographs, as well as photographers' negatives, books, papers, and other materials. ICP staff, under my direction, administer the copyrights for twelve major photographer's estates, and over 100,000 individual images.

3.     At ICP, we fully support the rights of all artists including photographers, from the well-known to the amateur. We believe the purpose of the fair use doctrine is to stimulate creativity in all

visual artists. Confusion of fair use and legitimate copyright protections poses a potential chilling effect on artistic creativity.

4.  In my experience, the limited and historically validated examples of fair use protection to appropriation artists do not appreciably affect the market for professional photographers, their agencies, and their stock houses.

## II.  Richard Prince's *Canal Zone*

5.  As indicated in my initial Declaration, dated October 11, 2013, Prince's use of found photography in the *Canal Zone* series exemplifies a transformative artistic use of the underlying photographs that is distinct from commercial licensing.

6.  Context is one of several elements essential to understanding the difference between Prince's work and Cariou's, including the particular ways in which Prince's work creates new meaning and expression. Moving an image from a printed publication, where it is considered primarily for its documentary rendering of content, to an art gallery or museum, where it is physically transformed and evaluated by different criteria, necessarily helps establish a new meaning. Victor Burgin, whose writings on photography are attached to the Declaration of Jeremy Sparig on behalf of the Photographer Amici, states that "[t]he meaning of any photographic message is necessarily context determined." (Decl. of Jeremy Sparig, dated Dec. 16, 2013, ¶ 15.)

7.  In this case, the *Canal Zone* works, including the five remanded paintings, do not simply move an image from one publication to another to create a related, derivative, or competitive work. The history of Prince's work and the historical context of modern art underscore the essentially transformative motive of his work. The new context, along with Prince's other contributions and alterations, makes the five remanded paintings fundamentally different products from Cariou's, with a fundamentally different meaning.

8. Cariou and the Photographer Amici argue for a strictly visual side-by-side comparison of Prince's works and Cariou's pictures that would render the context in which each work is presented meaningless to understanding whether Prince's works are fair use. However, such a test could not legitimately overlook the new intellectual content and inflections of meaning that a reasonable observer would perceive in the five remanded paintings derived from the social and critical context of the art gallery setting, the significance of Prince's thirty-five-year body of work on this methodological theme, and the specific narrative throughline of the other *Canal Zone* works. Scholarship in the humanities and common sense demonstrate that no cultural artifact establishes meaning in a vacuum. For the same reason, Prince's works cannot be stripped of their intellectual and critical aspects as fundamentally different works of art and which are perceived as such in part based upon the context in which each work is presented.

9. Even if we were to consider the five remanded works in isolation, in my experience as an art observer, there are significant and demonstrable differences between Prince's and Cariou's works. As indicated in my initial Declaration, these differences in material form and creative content have been amply demonstrated by numerous critics and viewers. This is not a case of direct copying and re-presentation of Cariou's work, or an attempt to confuse the public that what they are looking at is Cariou's work. Prince has used Carious's imagery as part of a highly inventive and personal narrative sequence that stands alone as a significant contemporary work of art. And, crucially, what intellectual significance applies to one part of that sequence—*i.e.*, one of Prince's *Canal Zone* paintings—applies to all.

III. **Appropriation Art Does Not Harm Commercial Licensing**

10. Whereas the Photographer Amici argue that sanctioning Prince's appropriation of Cairou's original photographs in this case would threaten the market for licensing of stock photographic images and unfairly harm industrious independent photographers, my thirty-year professional

3

experience tells me that this is not the case. To compare the system for commercial licensing and the fine-art marketplace is to compare apples and oranges. It is possible to uphold the traditional commercial business of copyright holders while indulging the experiments of hardworking contemporary artists.

11. Not every act of appropriation is piracy. The rich tradition of appropriation art, which has been critically established and aesthetically refined for over a century, has never, to my knowledge, threatened or interfered negatively with the commercial value of the work appropriated. Rather, in my experience, the far greater concern is the ever-present chilling effect on legitimate artistic creativity posed by threats of overzealous copyright litigation.

12. Given that the educational and artistic applications of fair use are well-established and socially useful traditions, it remains to distinguish why these exceptions differ from random unlicensed use of "stock" images. As Deputy Director of a museum that manages the copyrights for at least a dozen photographers, including the prominent photographers Robert Capa and Weegee, I am fully aware of and opposed to fraudulent or unrestricted use of copyrighted images. We work regularly with clients who license a broad range of historical photographic images; we and our agents charge for these services and reproduction rights, as do working photographers. But we also work with scholars, educational institutions, and creative artists to provide images free of charge or at cost for educational and artistic purposes.

13. There is no essential conflict between these two distinct types of usages: in the licensing case, images are repurposed to new contexts *to convey their original meaning intact*; in the relatively rare instances of fair usage in fine art, an artist or educator is using the original work *to generate new meanings or ideas*.

14. As explained above and in my initial Declaration, Prince's appropriation of Cariou's photographs in the five remanded *Canal Zone* works, is fundamentally transformative and, therefore,

4

does not demonstrably interfere with Cariou's copyright interests or run afoul of the guidelines that govern circulation and licensing of commercial photography.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
January 27, 2014

_____
Brian Wallis, Ph.D.